UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AMANDA LEE VARON,<br><br>    Plaintiff<br><br>v.<br><br>STATE OF NEVADA, DEPARTMENT OF HEALTH AND HUMAN SERVICES, DEPARTMENT OF CHILD AND FAMILY SERVICES, et al.,<br><br>    Defendants | Case No.: 3:23-cv-00537-MMD-CSD<br><br>**Report & Recommendation of United States Magistrate Judge**<br><br>Re: ECF Nos. 1, 1-1, 4 |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff has filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and pro se complaint (ECF No. 1-1). She has also filed a request to submit a statement of juvenile court and other events in chronological order. (ECF No. 4.)

## I. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense, or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915 applies to all actions filed IFP, not just prisoner actions).

In addition, the Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

A review of the application to proceed IFP reveals Plaintiff cannot pay the filing fee; therefore, the application should be granted.

## II. SCREENING

**A. Standard**

"[T]he court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. As such, when reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under

Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff's complaint names the State of Nevada, Department of Health and Human Services, Division of Child Family Services (DCFS) in the caption, and goes on to list the following defendants: Jessica Carstens (DCFS Supervisor II), the Honorable Judge Kimberly Okezie (Juvenile Court Judge), Buffy Okuma (Carson City District Attorney), the Honorable

James T. Russell (District Court Judge), Molly Blanchette (Social Services Manager III), Johanna Presswood (Social Worker III), Shelby Riley (Social Worker I), Mickayla Porter (Social Worker I), Dr. Janet Cahill (DCFS psychologist), Melanie "Emmy" McCormick (CASA[1] Director, Guardian Ad litem), Bekah Bock (MOST Team[2] Social Worker), Don Gibson (Carson City Sheriff's Deputy), and Jennifer Jonte (Adoption Worker, BSW/SW III).[3]

She also references various other individuals who are not specifically named as defendants, and it is not clear whether she intends to proceed with claims against them, and if so, what claims she is asserting against them: the Honorable James T. Wilson, responding deputy Israel Loola, DCFS Guardian Ad Litem Kay Ellen Armstrong, and Deputy Attorney General Sharon Benson and Carson City Public Defender Katie Felesina Miller.

Plaintiff alleges that a case was opened due to her having a mental/nervous breakdown stemming from childhood trauma on February 11, 2017. She relays that she was processing trauma from mental and physical abuse from her family that occurred from childhood into adulthood. As a result of her mental state, calls were made to DCFS and to the Carson City Sheriff's Department, which lead DCFS to be concerned for the safety of Plaintiff's child.

---

[1] CASA stands for Court Appointed Special Advocates, it is a nationwide organization that "supports and promotes court-appointed volunteer advocacy for children and youth who have experienced abuse or neglect." See Home - National CASA/GAL Association for Children (nationalcasagal.org), last visited Jan. 17, 2024.

[2] MOST stands for Mobile Outreach Safety Team which helps Carson City residents and visitors "experiencing [a] mental health crisis, substance abuse or suicidal crisis" by connecting those individuals with available community resources. The team consists of two deputy sheriffs trained in crisis intervention and two licensed clinical social workers specializing in mental health in addition to numerous support agencies. See Mobile Outreach Safety Team | Carson City, last visited Jan. 17, 2024.

[3] Plaintiff's filing includes both a form complaint that does not contain substantive allegations, and an additional complaint that contains substantive allegations. For purposes of screening, the court has construed both documents as her complaint. If Plaintiff elects to amend, her pleading should be contained in a single document.

Plaintiff alleges her child was removed from her home on February 15, 2017, when Plaintiff was placed on an involuntary legal mental health hold.[4] She states that neither the MOST team nor the responding sheriff's deputies told her where she was being taken. She further contends that she was hospitalized based on a false report by her uncle that she was a danger and safety risk to her son. She intimates that her uncle made this report to the Carson City Sheriff's Office after Plaintiff had told her uncle that she was done with the family, and he was aware earlier that day that Plaintiff was in the process of obtaining restraining orders to file against her aunt and uncle (the McClellands[5]) regarding abuse to herself and her son. Plaintiff ultimately decided not to file the restraining orders she had obtained from Domestic Violence Advocates, but instead, contacted Child Protective Services (CPS) to file a report over the phone. Plaintiff states that she called CPS again to retract her report the next day because she decided she did not want to get the courts or CPS involved. After she retracted the report, a deputy, Israel Loyola, was sent to her residence by CPS for a wellness check. Then additional deputies arrived, along with Molly Blanchette and Jhoanna Presswood from CPS and Bekah Bock from the MOST Team, as well as Deputy Don Gibson. This made Plaintiff anxious.

As was discussed above, Plaintiff was placed on a legal mental health hold and was hospitalized, and her son was taken from her and placed in foster care as a ward of the state. She

---

[4] If certain authorized individuals have probable cause to believe a person is in a mental health crisis, they may place the person on a mental health hold by taking them into custody "for assessment, evaluation, intervention and treatment at a public or private mental health facility or hospital." Nevada Revised Statute (NRS) 433A.160. In addition, a proceeding for an order requiring that a person receive assisted outpatient mental health treatment may be commenced in a district court. NRS 433A.335.

[5] Plaintiff alleges that the McClellands are her aunt and uncle, but also indicates that they became her own adoptive parents at some point.

asserts, however, that she should not have been placed on the legal hold as she was neither suicidal nor a safety risk to herself or others.

Plaintiff was apparently released from the hospital at some point, and she was then involved in intensive outpatient therapy. She asserts that she filed for temporary protective orders against the McClellands after she was released from the hospital.

Plaintiff avers that DCFS discredited and did not take seriously her claims and allegations against her family, and the abuse she and her son received from the McClellands after she was released from the hospital. She claims that her son was placed in the care of the McClellands at the discretion of "DCFS, Guardian Ad Litem, Kay Ellen Armstrong (not named a defendant), CASA, CASA Director Melanie McCormick and Juvenile Court Judge Kimberly Okezie.

Plaintiff claims that case workers and DCFS Supervisor Jessica Carstens continued to harass her and disregarded restraining orders against the McClellands, diagnoses she received from her therapist and psychiatrist, and letters from her therapist that she was not a safety risk to her child.

She alleges that Carson City District Attorney Buffy Okuma said in a court hearing that Plaintiff was not in her right mental state, which she maintains contributed to her son having a relationship with the McClellands and caused her post-traumatic stress disorder (PTSD) symptoms to not subside. Then, she asserts that DCFS used her PTSD and anxiety against her, deeming her unfit and incapable of caring for her son. DCSF apparently charged her with abuse and neglect, which Plaintiff contends was not supported by any evidence.

She claims that CPS illegally seized her son and DCFS terminated her parental rights based on false allegations that Deputy Attorney General Sharon Benson filed in the district court. She claims that Judge Okezie and CPS disregarded what her therapist said. She asserts that CPS

Supervisor Jessica Carstens agreed to the treatment Plaintiff was to receive and her diagnosis of PTSD, but then contacted Plaintiff's therapist, "searching for and wanting a diagnosis of bi-polar that isn't there." After that, DCFS asked that Plaintiff be seen by their own psychologist, Dr. Janet Cahill, and Plaintiff had a full psychological evaluation with Dr. Cahill. She asserts that CPS kept her son with the McClellands, who continued their abuse and neglect of her son for two years during these proceedings.

Plaintiff goes on to allege that District Attorney Buffy Okuma dropped the abuse and neglect charges against her on April 24, 2017, two months after her son was removed from her care. Plaintiff maintains she is not a safety risk to her son. She acknowledges that she suffers from complex PTSD as a result of domestic abuse, but this does not make her incapable of caring for her son.

She asserts that her constitutional rights were violated and also references negligence for the duty to protect children from abuse and neglect.

**C. Analysis**

**1. Format**

Plaintiff should familiarize herself with the Local Rules, which can be accessed on the court's website. Lines of text must be **double-spaced.** In addition, lines of text must be numbered consecutively on the left margin of each page **with no more than 28 lines per page**. Text must be **size 12 font or larger**. The margins must be at least one inch on all four sides. LR IA 10-1(a). The court may strike any future document that does not conform to these rules. LR IA 10-1(d).

///

///

### 2. Section 1983 and Personal Participation

42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

To obtain relief pursuant to section 1983, a plaintiff must establish a "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991); *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

To adequately plead the section 1983 elements, a complaint must identify what constitutional right each defendant violated, and it must provide sufficient facts to plausibly support each violation. *See e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (noting defendants must personally participate in misconduct to be liable under section 1983); *see also Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019) (defendant must have "personally played a role in violating the Constitution.").

When an official is sued under 42 U.S.C. § 1983, the inmate "must show that each defendant personally played a role in violating the Constitution." *Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019), *cert. denied sub nom., Smith v. Schwarzenegger,* 140 S.Ct. 159 (2019) ("inmates must show that each defendant personally played a role in violating the constitution."). In addition, "[u]nder section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability.'" *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (en banc) (quoting *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)).

1       "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Snow,* 681 F.3d at 989 (quoting *Hansen*, 885 F.2d at 646).

      The causal connection can include: " 1) [the supervisor's] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) conduct that showed a reckless or callous indifference to the rights of others." *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir. 2013) (citations and internal quotation marks omitted). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or should have known would cause others to inflict a constitutional injury." *Id.* (citing *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (Apr. 30, 2012)) (internal quotation marks omitted).

**3. State of Nevada and Department of Health & Human Services, Division of Child and Family Services, and CPS**

      The State of Nevada is not a person that may be sued for civil rights violations pursuant to 42 U.S.C. § 1983. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 69 (1997). In addition, the Department of Health and Human Services, Division of Child and Family Services and CPS, which are governmental agencies that are arms of the State, are not persons that can be sued under section 1983. *See Howeltt v. Rose*, 496 U.S. 356, 365 (1990); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Therefore, the State of Nevada, the Department of Health and Human Services, Division of Child and Family Services, and CPS should be dismissed from this action with prejudice.

**4. Judges**

Plaintiff sues Juvenile Court Judge Kimberly Okezie, District Court Judge James T. Russell, and also includes allegations against District Court Judge James Wilson. The allegations are based on conduct they undertook while presiding over Plaintiff's cases.

Judges are entitled to absolute judicial immunity for acts performed in their official capacity, as Plaintiff has alleged here. *See In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002) (judicial immunity is "a 'sweeping form of immunity' for acts performed by judges that relate to the 'judicial process.'"). Therefore, Judges Okezie, Russell, and Wilson should be dismissed with prejudice.

**5. District Attorney and Public Defender**

Plaintiff alleges that Carson City District Attorney Buffy Okuma dropped the abuse and neglect charges against Plaintiff on April 24, 2017, two months after Plaintiff's son was removed from her care.

State prosecutors are absolutely immune from section 1983 actions when performing functions "intimately associated with the judicial phase of the criminal process" or phrased differently, "when performing the traditional functions of an advocate." *Garmon v. County of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997)). In dropping charges against Plaintiff, Okuma would have been acting in her role as advocate for the State. Therefore, Buffy Okuma should be dismissed from this action with prejudice.

Plaintiff alleges that Carson City Public Defender Katie Felesina Miller told her that Plaintiff would have to allow her aunt and uncle back into her and her son's lives or her son would not be returned to her custody. A public defender when acting in role of advocate is not a

State actor for purposes of section 1983. *See Georgia v. McCollum*, 505 U.S. 42, 53 (1992); *Jackson v. Brown*, 513 F.3d 1057, 1079 (9th Cir. 2008). Where, on the other hand, a public defender is performing administrative or investigative functions, he or she may be acting under color of state law. *Vermont v. Brillon*, 556 U.S. 81, 91, n. 7 (2009). First, it is not clear whether Plaintiff actually intends to proceed with a claim against the public defender, and if she does, it is not clear whether she can proceed against the public defender due to insufficient allegations. Therefore, to the extent Plaintiff intends to proceed against Miller, she should be dismissed with leave to amend.

**6. Legal Mental Health Hold**

"In general, due process precludes the involuntary hospitalization of a person who is not both mentally ill and a danger to one's self or others." *Jensen v. Lane County*, 312 F.3d 1145, 1147 (9th Cir. 2002) (citing *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975)). In the context of a long-term commitment, "the state must prove both mental illness and dangerousness by more than a preponderance of the evidence, but not beyond a reasonable doubt." *Id*. (citation omitted). In the context of a short-term legal hold, "the state must prove mental illness and imminent dangerousness beyond a mere preponderance of the evidence." *Id*. (citation omitted). Physicians must follow standards of the medical profession in making judgments about holding a person for evaluation. *Id*. (citation omitted).

Plaintiff seems to allege that her mental health hold and hospitalization were not legally justified, but other than concluding that she was not suicidal and that she did not pose a safety risk, she does not include sufficient *factual details* to support her claim. In addition, she does not indicate whom she alleges was responsible for her alleged improper placement on a mental health hold. Therefore, this claim should be dismissed with leave to amend.

**7. Taking Her Son, Termination of Her Parental Rights, and Judicial Deception**

Plaintiff makes reference to the Fourteenth Amendment's Due Process Clause, the Fourth Amendment, as well as the First Amendment. The First and Fourteenth Amendments provide a guarantee that parents will not be separated from their children without due process of law except in emergencies. *See David v. Kaulukukui,* 38 F.4th 792 (9th Cir. 2022) ("Our caselaw has long recognized [the right to familial association] under the Fourth and Fourteenth Amendments."); *Keates v. Koile,* 883 F.3d 1228, 1235-36 (9th Cir. 2018) (there is also a right to familial association under the First Amendment); *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 788-89 (9th Cir. 2016). The Fourth Amendment protects against warrantless seizures. U.S. Const., amend IV. Finally, the Fourteenth Amendment provides right to be free from judicial deception' in child custody proceedings and removal orders." *David*, 38 F.4th at 800.

**a. Fourteenth Amendment's Due Process Clause and the First Amendment**

"[T]he interest of parents in the care, custody and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *David*, 38 F.4th at 800 (citation and quotation marks omitted). "For parents, the right to familiar association is generally grounded in the Fourteenth Amendment's Due Process Claus[.]" *Id*. (citations omitted); *see also Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000) ("Parents and children have a … constitutional right to live together without governmental interference[,] … [which is] essentially a liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency.").

"[T]he right to familial association is violated if a state official removes children from their parents without their consent, and without a court order, unless information at the time of the seizure, after reasonable investigation, establishes reasonable cause to believe that the child is

12

in imminent danger of serious bodily injury." *David*, 38 F.4th at 803 (citation and quotation marks omitted). In addition, "even if there is reasonable cause to believe that the initial removal of a child without a court order or consent is necessary, the continued separation of a child from her custodial parent is constitutional only if the scope, degree, and duration of the intrusion is reasonably necessary to avert the specific injury at issue." *Id*. (citation and quotation marks omitted).

As a result of the constitutionally protected liberty interest in "the custody and care of [one's] children … due process must be afforded prior to a termination of parental status." *Woodrum v. Woodward County, Okl.*, 866 F.2d 1121, 1124 (9th Cir. 1989) (citing *Santosky v. Kramer*, 455 U.S. 745, 752-57 (1982); *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981)). "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." *Santosky*, 455 U.S. at 747-48.

"The First Amendment also protects family relationships[,]" and "claims under both the First and Fourteenth Amendment for unwarranted interference with the right to familial association could survive a motion to dismiss." *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (citation and quotation marks omitted).

While it is possible Plaintiff could state claims for violation of her rights to familial association related to her son being taken away and her parental rights being terminated under the First and Fourteenth Amendments, Plaintiff's allegations are disjointed, and she does not specifically tie the alleged wrongdoing to any particular defendant. Therefore, her Fourteenth Amendment and First Amendment claims that her rights to familial association were violated

should be dismissed with leave to amend. If she elects to amend, Plaintiff must describe how her rights were violated, identify whom she alleges violated her rights in this regard and make sure to describe what *each* defendant did to violate her rights.

**b. Judicial Deception**

Plaintiff also seems to allege that her parental rights were terminated based on judicial deception by various actors.

"[A]s part of the right to familial association, parents and children have a 'right to be free from judicial deception' in child custody proceedings and removal orders." *David*, 38 F.4th at 800 (citing *Benavidez*, 993 F.3d at 1152 ("material omissions and misrepresentations with a deliberate disregard for the truth to a juvenile court would violate the Constitution"); *Costanich v. Dep't of Soc. & Health Servs*, 627 F.3d 1101, 1108 (9th Cir. 2010) ("[D]eliberately fabricating evidence in civil child abuse proceedings violates the Due Process [C]lause of the Fourteenth Amendment when a liberty or property interest is at stake."); *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001)).

To state a violation of the constitutional right to familial association through judicial deception, a plaintiff must allege "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *David*, 38 F.4th at 801 (citations and quotation marks omitted). The misrepresentation or omission is material "if a court would have declined to issue the order had [the defendant] been truthful." *Id*. (citation and quotation marks omitted).

Plaintiff includes very vague allegations of judicial deception, and she does not sufficiently describe the factual events that led to the judicial deception, or what each specific

14

defendant did that she claims violated her rights in this regard. Therefore, her claim for judicial deception should be dismissed with leave to amend.

### c. Fourth Amendment

Plaintiff appears to allege the Fourth Amendment was violated by the seizure of her son without a warrant or court order.

"[T]he Fourth amendment safeguards children's 'right … to be secure in their persons … against unreasonable … seizures" without a warrant[,]" although there is an exception to the warrant requirement for exigent circumstances. *Kirkpatrick,* 843 F.3d at 789-90 (citing U.S. Const., amend IV).

The Fourth amendment right to be free from unreasonable, warrantless seizures is the right of the child. *See id.*, n. 2; *David*, 38 F.4th at 799 (citation omitted) ("claims brought by children [for violation of the right to familial association] are evaluated under the more 'specific' Fourth Amendment right to be free from unreasonable seizures."). "[T]he same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the removal of children." *Id*. (citation and quotation marks omitted).

"Standing addresses whether the plaintiff is the proper party to bring the matter to court for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citations omitted). A plaintiff generally does not have standing to bring a claim based on the alleged violation of the rights of a third party. *See Martin v. Cal. Dept. of Veterans Affairs,* 560 F.3d 1042, 1050 (9th Cir. 2009) (citation omitted). While a parent or guardian ad litem might have standing to bring a claim on behalf of a minor child, Plaintiff has alleged her parental rights have been terminated. In addition, even if Plaintiff's parental rights had not been terminated, in the Ninth Circuit, "a parent or guardian cannot bring an action on behalf of a

minor child without retaining a lawyer." *Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997).

Therefore, Plaintiff lacks standing to bring a Fourth Amendment claim on behalf of her son. As such, the Fourth Amendment claim should be dismissed. The dismissal should be without prejudice in the event Plaintiff's parental rights are restored, or if a guardian ad litem seeks to raise such claims, both of which must be done through an attorney.

### 8. Negligence

Plaintiff's complaint also references a claim for negligence.

The State of Nevada has generally waived sovereign immunity for state tort actions in *state court*. NRS § 41.031(1). To bring a tort action arising out of an action or omission with the scope of a person's public duties or employment, a plaintiff must name the State or appropriate political subdivision as a party defendant. NRS 41.0337.

"The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other states, U.S. Const. amend. XI, and by its own citizens as well[.]" *Walden v. Nevada*, 945 F.3d 1088, 1092 (9th Cir. 2019) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). With respect cases filed in *federal court*, the State of Nevada has not expressly waived its immunity from suit conferred by the Eleventh Amendment. NRS § 41.031(3). Generally, the State of Nevada and arms of the state cannot be sued in federal court. *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (holding that "Nevada has explicitly refused to waive its immunity to suit under the eleventh amendment . . . The Supreme Court has made it clear that section 1983 does not constitute an abrogation of the eleventh amendment immunity of the states."). Absent a waiver of Eleventh Amendment immunity, where the State of Nevada is an indispensable party (such as under NRS 41.0337), the federal court does not have supplemental jurisdiction over the

state law tort claim because it does not have jurisdiction over the indispensable party—the State. *See Hirst v. Gertzen*, 676 F.2d 1252, 1264 (9th Cir. 1982) (holding that, where Montana law deemed governmental entities indispensable parties in a state tort claim against a state employee, the federal court had no supplemental jurisdiction over the state tort claim if it had no jurisdiction over the indispensable party).

To the extent Plaintiff's negligence claim is asserted against State actors, it should be dismissed with prejudice. Insofar as Plaintiff intends to sue non-State actors, such as county officials, for negligence, she should be granted leave to amend. However, she is required to describe what conduct was negligent and what each defendant did that constitutes negligence.

**9. Rules 8 and 20**

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The purpose of this rule is for the complaint to give the opposing party fair notice of the claim and the grounds upon which it rests. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). In addition, a plaintiff may add multiple parties to a lawsuit where the right to relief arises out of the "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Unrelated claims involving different defendants must be brought in separate lawsuits.

Plaintiff's current complaint includes a section labeled "Points and Authorities" wherein she appears to copy and paste various legal standards and commentary, some of which are not directly relevant to her allegations. She includes a reference to federal crimes, which are not at play in a civil action such as this one. She also provides authority on various federal disability

laws, but nowhere does she allege how she is disabled under the Americans with Disabilities Act (ADA) or Rehabilitation Act (RA), or provide factual allegations consistent with a claim under the ADA or RA.

Plaintiff includes various extraneous facts in her complaint that do not seem to relate to the core allegations about her mental health hold and hospitalization or her parental rights. For example, she includes facts about Nevada Medicaid not paying for her hospitalizations, but it is unclear whether she intends to assert a claim related to these facts. In addition, she references a petition for involuntary admission brought by Dr. Steven Holroyd on December 13, 2023, she contends was unfounded, his alleged violation of her HIPPA rights, but this seems unrelated to her core allegations. She also includes statements that she was treated and diagnosed for something she does not have (bipolar disorder and schizophrenia), that she refused to take medication, and then was forced to take medications against her will, but she does not specifically indicate she is stating any claims based on these facts. To the extent these facts are intended to form the basis of any claim, Plaintiff should be instructed to clarify whether she is proceeding with a claim based on these facts, and if so, specifically identify such claims.

If Plaintiff files an amended complaint, she must comply with the Rule 8. She should not include a recitation of a multitude of authorities, or facts that are not related to the claims on which she intends to proceed.

**10. Request to Submit Statement of Juvenile Court and DCFS Events in Chronological Order (ECF No. 4)**

Plaintiff's request should be denied. She must submit an amended complaint, which is *complete in and of itself*, without reference to any prior pleading or other filings. The amended

complaint must contain all defendants and allegations and claims on which she desires to proceed.

### III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING** Plaintiff's IFP application (ECF No. 1). Plaintiff is permitted to maintain this action without prepaying the filing fee.

(2) The complaint (ECF No. 1-1) should be **FILED**.

(3) The following defendants should be **DISMISSED WITH PREJUDICE**: the State of Nevada and Department of Health and Human Services, Division of Child and Family Services and CPS; Judges Okezie, Russell and Wilson; Carson City District Attorney Buffy Okuma.

(4) Plaintiff's Fourth Amendment claim based on the seizure of her son should be **DISMISSED WITHOUT PREJUDICE**,

(5) Plaintiff's negligence claim should be **DISMISSED WITH PREJUDICE** to the extent Plaintiff intends to bring it against any State employee.

(6) Plaintiff's claims for violation of her First and Fourteenth Amendment rights to familial association and right against judicial deception, her negligence claim to the extent she intends to assert it against non-State actors (such as county officials), as well as any claim against Carson City Public Defender Katie Felesina Miller should be **DISMISSED WITH LEAVE TO AMEND.**

(7) The request to submit a statement of juvenile court and DCFS events in chronological order (ECF No. 4) should be **DENIED**.

(8) Plaintiff should be given 30 days from the date of any order adopting this Report and Recommendation to file an amended complaint. The Clerk should be directed to **SEND** Plaintiff the instructions for submitting a complaint and form complaint. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall clearly title the amended pleading as "AMENDED COMPLAINT" or check the appropriate box for an amended complaint if using the form complaint. If Plaintiff fails to file an amended complaint within the 30 days, the action may be dismissed.

Plaintiff should be aware of the following:

1. That she may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 18, 2024

_____
Craig S. Denney
United States Magistrate Judge